# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| JULIE MCGROTHA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:05-CV-391 (CAR) |
| | : | |
| FED EX GROUND PACKAGE SYSTEM, | : | |
| INC. D/B/A FED EX GROUND and | : | |
| VAN HAYES, | : | |
| | : | |
| Defendants. | : | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff Julie McGrotha ("McGrotha") initiated this action against Defendant Fed Ex Ground Package System, Inc. ("Fed Ex") alleging, inter alia, that Fed Ex sexually discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2005).  Before this Court is Defendants' Motion for Summary Judgment (doc. 22).  For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Construing the record in the light most favorable to McGrotha, and drawing all reasonable inferences in her favor, the relevant facts—recounted in some detail—are these.

1

McGrotha began working for Fed Ex as a part-time employee in May 2000. She became a full-time employee in October 2000 when she was promoted to an "Administrative Clerk III" position. With this promotion came a $1.19 per-hour raise and additional responsibilities, as well as some added stress. Around this time, McGrotha claims she approached her supervisor, Defendant Van Hayes ("Hayes") while he was engaged in a heated conversation with a driver, and he turned to her and said: "What the f*** do you want?" (Pl.'s Br. Supp. Mot. Summ. J., doc. 24, at 12.) Sometime after this incident, between 2001 and 2002, McGrotha approached Hayes and asked about being promoted to a management position. McGrotha told Hayes that she felt she was doing a manager's work for clerk's pay, and that she deserved to be promoted. Hayes informed McGrotha that Fed Ex preferred its managers to either have a college degree or to be in the pursuit of a college degree. While McGrotha had taken some college courses at Macon State College prior to accepting her position at Fed Ex, she was not, at that point, enrolled in any classes.

Not long after her conversation with Hayes, McGrotha encountered the second of a series of allegedly harassing conduct at Fed Ex (with Hayes's October 2000 comment being the first such episode). McGrotha claims that, in 2000 or 2001, a contractor told her a "sex-related joke." (Pl.'s Br. 12.) Next, in December 2003, services manager Robert Fountain allegedly told McGrotha to "sit down at the d*** desk and do the d*** secretary's

job" while "scratching his privates." (*Id*.)  In early 2004, "a contractor named Marcus Birt allegedly called McGrotha a "g**d*** b****."  (*Id*.)  The fifth incident allegedly occurred in June 2004, when Hayes told McGrotha to "get off her motherf***ing a** and cancel the motherf***ing contract." (*Id*.)  Roughly two months after the June 2004 incident, McGrotha allegedly suffered a sixth incident of sexual harassment when Skip Lowery, a contractor, told McGrotha that Hayes was "a p***y . . . who didn't know who he [was] f***ing with," and that he would "stuff" and "cuff" Hayes, then "beat that p***y motherf***er's a**." (*Id*.) The final incident of "harassment" McGrotha complains of occurred on January 26, 2005, when Terrence Long, a manager, told McGrotha to "get off her a** and take care of that herself."  (*Id*.)

Though McGrotha often resented how she was treated at Fed Ex, she continued to perform her daily job responsibilities.  One of McGrotha's duties as an administrative clerk was to periodically enter the company safe located in Hayes's office to verify that certain funds had been deposited.  According to McGrotha, only two supervisory employees, Hayes and Michael Tran ("Tran"), had keys to the safe, and she only entered the safe when directed to do so by Hayes.  On January 17, 2005, Hayes reported that money was missing from the safe in his office.  Three days later, Tad Fuqua ("Fuqua"), a Fed Ex security specialist, installed a security camera near the office safe.  Between January 25 and January 28, 2005, Fed Ex claims the camera recorded McGrotha accessing the safe "without

authorization" three times, though McGrotha insists she accessed the safe only at Hayes's direction. (Pl.'s Br. 4; Defs.' Br. Supp. Mot. Summ. J., doc. 22, at 16.) On January 26, 2005, McGrotha filed a complaint with Hayes about "not being promoted to a management position and doing management work for clerk's pay." (Pl.'s Br. 6.) Hayes told no one of McGrotha's complaint. Fuqua called McGrotha in for an interview on February 1, 2005. When McGrotha asked that her attorney be present during the interview, Fed Ex apparently construed this request as a refusal to cooperate with the investigation. Later that day, Regional Manager Terry Carter instructed Hayes to terminate McGrotha's employment "for the integrity issues that arose from her failure to cooperate with the investigation." (Defs.' Br. 17.)

On October 25, 2005, McGrotha filed the instant Title VII action, asserting claims against Defendant Fed Ex for: (1) failure to promote; (2) hostile work environment; and (3) wrongful and retaliatory discharge. McGrotha's Complaint also includes a defamation claim against Hayes, her former supervisor. (Compl., doc. 1, Counts I-IV.)

## III.   SUMMARY JUDGMENT STANDARD

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (West 2005); *see also* **Celotex Corp.**, 477 U.S. at 322.  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  **Reeves**, 530 U.S. at 150; *see also* **Maynard v. Williams**, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law.  **Celotex Corp.**, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(e); **Celotex Corp.**, 477 U.S. at 324-26.  This evidence must consist of more than mere

conclusory allegations or legal conclusions.  *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## IV.   LEGAL DISCUSSION

McGrotha asserts numerous interrelated claims of sexual harassment against Fed Ex. First, McGrotha claims that, due to her sex, Fed Ex denied her a promotion and subjected her to a hostile work environment.  McGrotha further claims that Fed Ex terminated her because of her sex, and in retaliation for the complaints she lodged about the alleged harassment and discrimination she suffered during her employment.  Finally, McGrotha asserts a defamation claim against Hayes, her former supervisor, claiming that Hayes spread malicious and false rumors about her.

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42. U.S.C. § 2000e-2(a)(1). Title VII plaintiffs "bear the burden of proving that the[ir] employer[s] discriminated against them unlawfully." *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).  Proof of discrimination may be established through either direct or

circumstantial evidence. Direct evidence, unlike circumstantial evidence, "is that which shows an employer's discriminatory intent 'without any inference or presumption.'" *Id.* (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). Here, McGrotha offers, at best, circumstantial evidence to support her gender-discrimination claims. Accordingly, the Court will evaluate most of her claims under the "circumstantial evidence" framework first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, McGrotha bears the initial burden of presenting "sufficient evidence to allow a reasonable jury to determine that [s]he has satisfied the elements of h[er] prima facie case of gender discrimination." *See id.* at 802. Once she has done so, the burden shifts to Fed Ex "to articulate some legitimate, nondiscriminatory reason" for its employment decision. *Id.* At that point, McGrotha must "be afforded a fair opportunity to show" that Fed Ex's reason(s) were pretextual. *Id.* at 804. The Court will first address McGrotha's failure-to-promote claim.

**A.    Failure to Promote Claim**

McGrotha alleges Fed Ex failed to promote her because of her sex. Fed Ex contends McGrotha's promotion-discrimination claim "cannot survive summary judgment because [she] cannot establish that she qualified for a promotion." (Defs.' Br. 3.)

**1. Prima Facie Case**

To establish a prima facie case of promotion discrimination based on sex, the plaintiff must show: (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was rejected in spite of her qualifications; and (4) the employer promoted an individual outside of her protected class. *See **Denney v. City of Albany**,* 247 F.3d 1172, 1183 (11th Cir. 2001). Fed Ex does not dispute that McGrotha is a member of a protected class who applied for a promotion to a service manager position, or that a male was promoted over her. Fed Ex argues, however, that McGrotha cannot prove her prima facie case because she was not qualified for the manager position for which she applied. The Court disagrees.

To satisfy the second requirement of her prima facie case, a plaintiff usually need only show that she satisfied the employer's objective hiring criteria. In this case, however, Fed Ex has not articulated any objective criteria by which it evaluates its service-manager applicants. Fed Ex states only that it *prefers* service-manager applicants to have "completed a college degree program," but qualifies this preference by indicating that it will consider employees who are "currently working toward a degree" for part-time manager positions. (Defs.' Br. 4.) Thus, while Fed Ex *preferred* its managerial applicants to have a college degree, such a degree was not, insofar as the Court can tell, a hard-and-fast requirement for these positions. Even taking into account Fed Ex's stated preference for college students or graduates, an applicant's educational background was presumably not Fed Ex's sole

means of evaluating managerial candidates. Indeed, the fact that McGrotha had performed duties typically reserved for service managers on an interim basis prior to seeking a promotion indicates that she was at least minimally qualified for a full or part-time management position. In short, Fed Ex's failure to clearly articulate any objective hiring criteria for its service managers forces the Court to assume that, because McGrotha performed managerial tasks on an interim basis, she was at least minimally qualified for a managerial position. *See Walker v. Mortham*, 158 F.3d 1177, 1185-93 (11th Cir. 1998); *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 963 (5th Cir. 1981)[1] ("Establishing qualifications is an employer's prerogative . . . but an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process, for example, is challenged as discriminatory."). In light of McGrotha's satisfaction of all the elements of her prima facie case, the Court turns to the next prong of the *McDonnell Douglas* analysis.

## 2. Legitimate, Non-Discriminatory Reason

McGrotha's proof of a prima facie case of gender discrimination creates a presumption that Fed Ex discriminated against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Fed Ex must now rebut this presumption by offering a legitimate,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to October 1, 1981.

non-discriminatory reason for its decision not to promote McGrotha. Fed Ex attempts to meet its burden by asserting that McGrotha was not promoted because she was less qualified than the individuals selected—namely, "the individuals selected for promotion either had a degree or were currently in school," whereas McGrotha did not have a college degree and was not, at the time she applied for these positions, enrolled in college courses. (Defs.' Br. 5.) Fed Ex's enumerated reason for not promoting McGrotha is sufficient to satisfy its burden of producing a legitimate, nondiscriminatory reason for its decision.

### 3. Pretext

Because Fed Ex met its burden of production, "'the presumption [of discrimination] raised by the prima facie case is rebutted . . . and drops from the case.'" *Id.* at 507 (quoting *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). At this point, McGrotha must produce evidence sufficient to enable a factfinder to conclude that Fed Ex's stated reason is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). McGrotha may do this "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted).

A reason is not pretextual "'unless it is shown *both* that the reason was false, *and* that

discrimination was the real reason.'" ***Brooks v. County Comm'n***, 446 F.3d 1160, 1163 (11th

Cir. 2006) (quoting ***St. Mary's***, 509 U.S. at 515) (emphasis added). In the context of a

promotion:

> a plaintiff cannot prove pretext by simply arguing or even by showing that
> [s]he was better qualified than the [employee] who received the position [s]he
> coveted. A plaintiff must show not merely that the defendant's employment
> decisio[n] w[as] mistaken but that [it] w[as] in fact motivated by [sex] . . . a
> plaintiff may not establish that an employer's proffered reason is pretextual
> merely by questioning the wisdom of the employer's reasons, at least not
> where . . . the reason is one that might motivate a reasonable employer.

***Id.*** (citations omitted). In fact, to rebut an employer's proffered reason, a plaintiff "must

show that the disparities between the successful applicant's and her own qualifications

were 'of such weight and significance that no reasonable person, in the exercise of

impartial judgment, could have chosen the candidate selected over the plaintiff.'" ***Id.***

(quoting ***Cooper v. S. Co.***, 390 F.3d 695, 732 (11th Cir. 2004)).

McGrotha has not rebutted Fed Ex's proffered reason for denying her the promotion.

McGrotha does not dispute that the individuals whom Fed Ex promoted were all either

college graduates or enrolled college students, nor does she offer any evidence, other than

her stint as an interim service manager, to counter Fed Ex's contention that McGrotha was

not as qualified as her male counterparts. Although McGrotha claims she "had some prior

college education," she admits she was not working toward a degree at the time she

applied for the promotion. Based on the evidence in the record, then, the Court cannot

conclude that the scant evidence McGrotha presented was of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidates selected over her. Fed Ex's stated preference for its managers to be college graduates or students enrolled in college courses was certainly legitimate, and McGrotha did not have, and was not working toward, a college degree when she applied for a promotion. In short, McGrotha has not pointed to any evidence from which a reasonable factfinder could deduce that Fed Ex's reason for not promoting her was false, or that sexual discrimination was the real reason she was not promoted. Accordingly, Defendants' Motion for Summary Judgment with respect to McGrotha's failure-to-promote claim is hereby **GRANTED**.

## B.     Hostile Work Environment Claim

McGrotha also claims that Hayes and other male employees of Fed Ex subjected her to a hostile work environment. Fed Ex contends McGrotha's hostile work environment claim fails because "the actions she alleges are not objectively hostile under controlling law." (Defs.' Br. 6.) The Court agrees.

To prevail on a hostile work environment claim under Title VII, a plaintiff must prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ***Harris v. Forklift Sys., Inc.***,

510 U.S. 17, 21 (1993) (internal citations omitted). To survive summary judgment, a plaintiff bringing this type of claim must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such an environment under a theory of vicarious or direct liability. ***Miller v. Kenworth of Dothan, Inc.***, 277 F.3d 1269, 1275 (11th Cir. 2002). Defendants do not dispute that McGrotha belongs to a protected group, or that she was subject to unwelcome commentary by her fellow employees. Rather, Defendants assert that McGrotha has not established the third and fourth elements of her prima facie case.

In support of her hostile work environment claim, McGrotha points to seven discrete incidents of sexual harassment. These incidents were outlined in the facts above, but will be recounted again here. First, McGrotha claims that, in October 2000, she approached Hayes while he was engaged in a heated conversation with a driver, and he turned to her and said: "What the f*** do you want?" (Pl.'s Br. 12.) Second, McGrotha claims that, in 2000 or 2001, a contractor told her a "sex-related joke." (***Id.***) Third, McGrotha alleges that, in December 2003, services manager Robert Fountain told her to "sit down at the d*** desk and do the d*** secretary's job" while "scratching his privates." (***Id.***)

Fourth, in early 2004, "a contractor named Marcus Birt allegedly called McGrotha a "g\*\*d\*\*\* b\*\*\*\*." (*Id*.) The fifth incident allegedly occurred in June 2004, when Hayes told McGrotha to "get off her motherf\*\*\*ing a\*\* and cancel the motherf\*\*\*ing contract." (*Id*.) Roughly two months after the June 2004 incident, McGrotha allegedly suffered a sixth incident of sexual harassment when Skip Lowery, a contractor, told McGrotha that Hayes was "a p\*\*\*y . . . who didn't know who he [was] f\*\*\*ing with," and that he would "stuff" and "cuff" Hayes , then "beat that p\*\*\*y motherf\*\*\*er's a\*\*." (*Id*.) The final incident of "harassment" McGrotha complains of occurred on January 26, 2005, when a manager named Terrence Long told McGrotha to "get off her a\*\* and take care of that herself." (*Id*.) The Court will first consider whether the harassment alleged by McGrotha was sufficiently severe or pervasive so as to alter the terms or conditions of her employment and create a discriminatorily abusive working environment.

In the words of the Supreme Court, Title VII is not "a general civility code." ***Oncale v. Sundowner Offshore Svcs., Inc.,*** 523 U.S. 75, 81 (1998). To be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so." ***Faragher v. City of Boca Raton***, 524 U.S. 775, 787 (1998). Courts resolve the question of whether an environment is sufficiently hostile or abusive by "looking at all the circumstances, including the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88 (citations and quotations omitted). "The ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not constitute actionable harassment. *Id.* at 788.

The Court does not doubt that McGrotha subjectively perceived the incidents outlined above to be severe and pervasive. The objective evidence in the record, however, does not support her subjective perception. The conduct McGrotha described does not rise to the level of actionable sexual harassment because the incidents that purportedly implicated her sex were, at best, mildly insulting and sporadic, rather than severe and pervasive. McGrotha's complaints of sexual harassment boil down to seven relatively minor incidents that occurred over a three or four year period. These incidents simply do not establish the existence of an environment that was so objectively intolerable that a reasonable person would have been forced to leave. *See Faragher*, 524 U.S. at 788 ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal citations and quotations omitted). Accordingly, Defendants' summary-judgment motion

with respect to McGrotha's hostile work environment claim is hereby **GRANTED**.[2]

## C.    Discriminatory Discharge Claim

Next, McGrotha alleges that Fed Ex terminated her employment because of her sex. Specifically, McGrotha claims fellow male employees committed offenses similar to the offense for which she was accused, but were not terminated.  Fed Ex contends McGrotha's discriminatory-discharge claim fails because "the actions for which [McGrotha] was terminated were both different and more egregious than the actions of the individuals to which Plaintiff claims she is similarly situated."  (Defs.' Br. 13.)  Because discriminatory-discharge cases based on circumstantial evidence of gender discrimination are governed by the *McDonnell Douglas* burden-shifting framework, the Court will first address whether McGrotha has established her prima facie case.

### 1. Prima Facie Case

To establish a prima facie case of discriminatory discharge, a plaintiff must show: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly situated employees outside her classification

---

[2] Even if the Court characterized the incidents McGrotha described as severe and pervasive, she still would not prevail on her hostile work environment claim because many—if not most—of the statements and conduct McGrotha cited cannot be considered gender-related or sexual in nature. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (for purposes of a hostile work environment claim, "statements and conduct must be of a sexual or gender-related nature—'sexual advances, requests for favors, [or] conduct of a sexual nature'") (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)).

more favorably, and (4) she was qualified to do the job. **Holifield v. Reno**, 115 F.3d 1555, 1562 (11th Cir. 1997). McGrotha submits that she has met her prima facie burden. Fed Ex contends, however, that McGrotha's discriminatory-discharge claim fails because she cannot point to a similarly-situated male employee who was treated more favorably than she was treated.

To prove the third element of her prima facie case, McGrotha must show that Fed Ex treated similarly situated employees outside of her classification more favorably than herself. To do so, McGrotha must first show that she and her comparator-employees "are similarly situated in all relevant respects." **Id.** at 1562. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." **Id.** *"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."* **Id.**

Fed Ex asserts that it terminated McGrotha's employment for "integrity issues; specifically, she was terminated after she refused to cooperate with a Company loss prevention investigation regarding money that was missing from a safe." (Defs.' Br. 13.) Fed Ex further contends that, because none of the employees McGrotha identified as being similarly situated refused to cooperate with an internal investigation, she has no

comparators and no prima facie case. McGrotha views the reason for her termination a little differently; she claims she was fired on suspicion of stealing money from a company safe. The Court will assume, for purposes of this analysis, that Fed Ex's decision to fire McGrotha was at least partially based on its belief that McGrotha had "integrity issues," i.e., that she stole money from a company safe. Accordingly, the Court will address McGrotha's contention that her fellow employees Robert Fountain, Defendant Hayes, and Michael Tran were accused of similar conduct, but were not terminated. The Court will analyze the similarities (or absence thereof) between McGrotha's and each employee's conduct separately, below.

### a. Robert Fountain

The first comparator McGrotha points to is Robert Fountain ("Fountain"). McGrotha claims Fountain "drove a truck for a contractor and allowed the contractor to keep the money instead of returning any [sic] to the company." (Pl.'s Br. 16.) For this conduct McGrotha claims Fountain "was disciplined, but not terminated." (*Id.*) Fed Ex does not contest McGrotha's foregoing allegations. (Defs.' Br. 14.) Rather, Fed Ex maintains that the conduct of Fountain and McGrotha was not sufficiently similar to warrant comparison under Title VII.

Fountain is not a proper comparator because McGrotha and Fountain were not involved in, or accused of, the same or similar conduct. While Fountain was accused of

18

conduct arguably involving some level of dishonesty, that is the only similarity the Court can see between his conduct and McGrotha's alleged conduct. Fountain was not suspected of stealing money directly from the company; he was accused of, at best, allowing the company to pay a contractor for services that the contractor did not render. Given the differences between these employees' conduct, Fountain and McGrotha were not similarly situated in all relevant respects, and McGrotha cannot base her prima facie case on the claim that Fed Ex treated Fountain less severely than it treated her. *See Holifield*, 115 F.3d at 1562.

### b. Defendant Hayes

McGrotha also points to Defendant Hayes as a possible comparator. According to McGrotha, Hayes "allowed contractors to rent vehicles while he paid for them with a company credit card." (Pl.'s Br. 16.) McGrotha further alleges Hayes was "only disciplined, but not terminated" for this conduct. (*Id.*) Fed Ex does not challenge McGrotha's foregoing assertions. Fed Ex submits, however, that Hayes's and McGrotha's conduct was not sufficiently similar to warrant comparison under Title VII.

Despite McGrotha's claims to the contrary, Hayes is not an appropriate comparator. Hayes allegedly paid for contractors to rent vehicles with a company credit card. McGrotha's alleged conduct falls within a different category altogether, as she was accused of stealing money from a company safe. Accordingly, the Court finds that McGrotha and

Hayes were not similarly situated, and McGrotha cannot base her prima facie case on the claim that Fed Ex treated Hayes less severely than it treated her.

### c. Michael Tran

In a final attempt to identify a proper comparator, McGrotha claims fellow employee Michael Tran was also accused of stealing money from Fed Ex; however, Tran "was only required to repay the money and he was not terminated." (Pl.'s Br. 16.) In response to this allegation, Fed Ex maintains that McGrotha was terminated not for her alleged theft *per se*, but "for her suspicious avoidance of a Company loss prevention interview related to her unauthorized access to a Company safe." (Defs.' Br. 14.)

Of the three potential comparators McGrotha identified, Tran is the employee whose conduct most closely mirrors McGrotha's conduct. Both McGrotha and Tran were accused of stealing money directly from Fed Ex. Fed Ex argues, however, that Tran and McGrotha are not similarly situated because Tran, unlike McGrotha, "cooperated with the Company's loss prevention officer, enduring 90 minutes of questioning without demanding legal representation before it was determined that he was not guilty of any wrongdoing." (Defs.' Br. 14.) McGrotha avers, on the other hand, that she "did not refuse to participate" in the internal investigation—she "merely asked that her attorney be present" during the interview. (Pl.'s Br. 17.) Drawing all reasonable inferences in McGrotha's favor, the Court cannot say at this juncture that McGrotha's request for a

lawyer was tantamount to a refusal to cooperate with the internal investigation. Thus, because McGrotha and Tran were otherwise similarly situated in terms of their conduct, the Court finds that McGrotha has established a prima facie case of discriminatory discharge, and will proceed with the *McDonnell Douglas* analysis.

**2. Legitimate, Non-Discriminatory Reason**

McGrotha's proof of a prima facie case of gender discrimination creates a presumption that Fed Ex discriminated against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Fed Ex rebuts this presumption by asserting one nondiscriminatory reason for McGrotha's termination: McGrotha's "refusal" to cooperate with the company's internal investigation. Because this reason, if believed, is one that might have motivated a reasonable employer to discharge an employee, Fed Ex has met its burden of production, and the Court proceeds to the final prong of the *McDonnell Douglas* analysis.

**3. Pretext**

Because Fed Ex met its burden, "'the presumption raised by the prima facie case is rebutted . . . and drops from the case.'" *Id.* at 507 (quoting *Texas Dep't. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). At this point, McGrotha must produce evidence sufficient to enable a factfinder to conclude that Fed Ex's stated reason was not its "'true reaso[n],'" but was "'a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). A reason is not pretextual

"'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" **Brooks v. County Comm'n**, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting **St. Mary's**, 509 U.S. at 515). McGrotha may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotations and citations omitted).

Here, McGrotha offers sufficient circumstantial evidence from which a reasonable factfinder could conclude that Fed Ex's proffered reason for her termination was false. While Fed Ex claims McGrotha's request for her attorney's presence during her interview amounted to a refusal to cooperate with the company's investigation, a reasonable jury could find this proffered reason for McGrotha's termination was false, i.e., that McGrotha's request for an attorney did not manifest an unwillingness on her part to participate in the investigation. The record evidence also supports a finding that McGrotha was terminated because of her sex. Though Fed Ex supposedly based its decision to fire McGrotha on her "refusal" to cooperate fully with the investigation, McGrotha's production of evidence that Tran, a similarly situated male employee, was not terminated after being accused of stealing casts doubt upon the reason Fed Ex gave for McGrotha's termination.

In light of the foregoing evidence and drawing all inferences in McGrotha's favor,

a reasonable jury could conclude that McGrotha did not refuse to participate in Fed Ex's internal investigation and that Fed Ex's proffer of this reason for her termination is pretextual. Accordingly, Defendants' summary-judgment motion with respect to McGrotha's discriminatory-discharge claim is hereby **DENIED**.

**D.     Retaliatory Discharge**

McGrotha also alleges Fed Ex terminated her employment in retaliation for the January 26, 2005 complaint she filed with Hayes concerning the alleged promotion discrimination and sexual harassment she suffered while at Fed Ex. Fed Ex contends this claim fails as a matter of law because McGrotha cannot establish a prima facie case of retaliatory discharge. The Court agrees.

Retaliatory-discharge cases based on circumstantial evidence are governed by the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of retaliatory discharge, a plaintiff must show: (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Fed Ex concedes that McGrotha engaged in statutorily protected activity and that her termination constituted an adverse employment action, but contends that her claim nonetheless fails because she "cannot prove that her complaints motivated the Company's decision to investigate her connection to [the] missing money

23

or that there was a causal link between her complaint and the decision to terminate her." (Defs.' Br. 15.) The Court will first address whether McGrotha has established a causal link between her protected activity and her termination.

"[T]o establish the requisite 'causal link' required as part of a prima facie case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (quoting *EEOC v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1570-71 (11th Cir. 1993)). At the same time, however, a plaintiff must, at minimum, "establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Id.* (citations omitted). To prove a causal connection between an employee's protected activity and the adverse employment action, then, the employee must show that: (a) "the decision-makers were aware of the protected conduct"; and (b) "the protected activity and the adverse employment action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000).

The record establishes the following facts relevant to McGrotha's retaliation claim. On January 17, 2005—nine days before McGrotha lodged her complaint with Hayes—Hayes reported that money was missing from the safe in his office. Three days later, Fuqua installed a security camera near the office safe. Between January 25 and January 28, 2005, the camera allegedly recorded McGrotha accessing the safe "without

24

authorization" three times, though McGrotha insists she accessed the safe only at Hayes's direction. (Pl.'s Br. 4; Defs.' Br. 16.)  McGrotha filed her complaint with Hayes on January 26, 2005.  Hayes did not inform anyone of McGrotha's complaint.  Fuqua called McGrotha in for an interview on February 1, 2005.  When McGrotha asked that her attorney be present during the interview, Fed Ex apparently construed this request as a refusal to cooperate with the investigation.  Later that day, Regional Manager Terry Carter instructed Hayes to terminate McGrotha's employment "for the integrity issues that arose from her failure to cooperate with the investigation."  (Defs.' Br. 17.)

McGrotha does not dispute that Carter was the sole decision-maker with respect to her termination, nor does she contend that Hayes had anything to do with her termination beyond informing her of Carter's decision.  However, McGrotha contests the veracity of Carter's assertion that he did not know of McGrotha's January 26 complaint to Hayes when he instructed Hayes to terminate her employment, as well as Hayes's contention that he did not inform anyone about McGrotha's complaint.  In support of this allegation, McGrotha offers nothing more than her opinion that, "since Terry Carter is over Hayes, it is likely that Hayes informed him of all job-related matters such as employee complaints."  (Pl.'s Br. 19.)

While the close temporal proximity between McGrotha's protected activity and her termination might suggest that the two events were not wholly unrelated, McGrotha's

inability to demonstrate that Carter—the sole decision-maker—knew of her complaint to Hayes when Carter terminated her employment is fatal to her prima facie case. Because the current record demonstrates that Carter was unaware of McGrotha's discrimination complaint when she was terminated, McGrotha cannot establish a causal connection between the protected activity (complaint) and the adverse employment action (termination). Absent a demonstrated causal link between these two events, McGrotha is unable to establish a prima facie case of retaliatory discharge. Accordingly, Defendants' summary-judgment motion with respect to McGrotha's retaliation claim is hereby **GRANTED**.

## E. Defamation

In addition to her numerous federal claims, McGrotha also asserts a state-law claim for defamation against Hayes over which this Court will exercise supplemental jurisdiction. *See* 28 U.S.C.A. § 1367(a). McGrotha seeks to hold Hayes liable for defamation because Hayes allegedly told Glen Patterson, who told McGrotha's friend and former fellow employee Jennifer Boggs, that McGrotha "had been arrested for stealing money and that she spent six weeks in jail" as a result. (Pl.'s Br. 20.) Fed Ex argues that McGrotha's defamation claim fails because the only "evidence" McGrotha offers to support her claim is "inadmissible double hearsay." (Defs.' Br. 19.)

To establish a claim for defamation in Georgia, a plaintiff must prove the existence

of: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Bollea v. World Championship Wrestling, Inc.*, 610 S.E.2d 92, 96 (Ga. Ct. App. 2005) (internal citations and quotations omitted). The Court need not address whether McGrotha has established the elements of her defamation claim because the Court's search for evidence in the record supporting McGrotha's defamation claim revealed nothing more than the inadmissible hearsay testimony of McGrotha herself. This singular piece of "evidence" consists of McGrotha's allegation that she "was told by one of her friends that Hayes had said that she had been arrested for stealing money and that she spent six weeks in jail for this." (Pl.'s Br. 20.) Yet, there is no record evidence that Hayes ever made this comment. The only evidence of this comment is the multi-layered hearsay testimony from McGrotha that another employee, Patterson, told McGrotha's friend (Boggs) what Hayes said about McGrotha, and Boggs relayed this information to McGrotha. Incidentally, Patterson avers in an affidavit that Hayes never told him that McGrotha was caught stealing, or that she was arrested, or that she spent time in jail as a result. (Patterson Aff., Defs.' Mot. Summ. J., doc. 22, at ¶ 3.) In sum, the "evidence" McGrotha offers to prove that Hayes made the alleged comment is inadmissible multi-layered hearsay that does not fall within any exception recognized by the Federal Rules of

Evidence; thus, the Court cannot consider this information as probative evidence on summary judgment. *See Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 783 (11th Cir. 2004) ("Inadmissible hearsay generally cannot be considered on a motion for summary judgment."). Accordingly, Defendants' summary-judgment motion with respect to McGrotha's state-law defamation claim is hereby **GRANTED**.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 22) is hereby **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED, this 9th day of May, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

JAB/aeg